**Chester Dale McDONALD, Plaintiff,**

v.

**Leo J. McCRACKEN, Ex-Director, Oklahoma Department of Corrections, et al., Defendants.**

**No. 74–111–C.**

United States District Court, E. D. Oklahoma.

Dec. 19, 1974.

Chester Dale McDonald, per se.

Paul Crowe, Asst. Atty. Gen., Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

MORRIS, Chief Judge.

Plaintiff, an inmate in the Oklahoma State Penitentiary, has brought this action under the Civil Rights Act, 42 U.S. C. § 1983 against the defendants, Leo J. McCracken, Ex-Director, Oklahoma Department of Corrections, Park J. Anderson, Ex-Warden; Harold D. Wilson, Associate Warden; and Gordon Wright, Ex-Chief of Security, Oklahoma State Penitentiary, complaining that acting under color of state law the defendants deprived plaintiff of certain of his civil rights in connection with his confinement as a prisoner in said institution.

The complaint was filed on April 5, 1974 and the principal thrust of the complaint is that on March 31, 1972, plaintiff was placed on administrative segregation, was thereafter placed in a maximum segregation unit and was thereafter placed in temporary isolation status in the punishment work gang and was accordingly on some form of "lockup" from the 31st day of March, 1972, until May 1, 1973, without having been taken before the prison disciplinary board. Plaintiff complains that his confinement under these circumstances without a disciplinary hearing, contravenes his constitutional rights. He also complains that during this period of confinement he was denied access to the courts in that he was restricted insofar as mailing privileges were concerned and denied access to the prison law library. He seeks damages against the defendants in the following amounts:

| Gordon Wright | $ 51,800 |
|---|---|
| Leo J. McCracken | 34,900 |
| Park J. Anderson | 34,900 |
| Harold J. Wilson | 13,960 |

The defendants have answered the complaint denying the allegations thereof. The Court has conducted an evidentiary hearing. The State of Oklahoma has voluntarily produced the plaintiff in open court so that he could testify concerning his complaints.

Prior to the introduction of any evidence plaintiff renewed his motion for a jury trial, which the Court denied and noted that an earlier but untimely request for jury trial had been denied by the Court pursuant to an order entered on August 2, 1974. The plaintiff then advised the Court, after first requesting a postponement of the trial, that he was ready to go forward but stated that he did not wish to testify in his own behalf. He further advised the Court that he wished to call the witnesses that he had subpoenaed. The Court noted that the file revealed that no subpoenaes had been requested or issued in the case and inquired of the plaintiff whether any of the persons whom he wished to subpoena were present in the courtroom. He stated that two of the defendants were present and he was permitted to call both of them as witnesses. Plaintiff declined to take the witness stand in his own behalf but was later called to testify as a witness for the defendants.

The evidence shows that plaintiff was placed in some kind of "lockup" for a period of approximately 13 months and that he was not taken before the prison disciplinary board. The evidence further shows that on March 31, 1972, at about 11:00 a. m., Captain C. C. Smith was informed by an inmate that there would be a killing at approximately 3:15 that afternoon and that the plaintiff and another inmate were thought to be the persons who would commit the crime. The plaintiff was placed under sur-

veillance. A killing did occur at about 3:25 p. m. The plaintiff, however, was not at the place where the murder occurred, but he was immediately thereafter locked up in an administrative segregation area for a period of approximately two months while the murder was being investigated.

The evidence further shows that in May of 1972 plaintiff was placed in maximum segregation unit. Approximately two months thereafter plaintiff's status was reviewed by prison authorities and he was placed in a segregation status known as punishment work gang. He remained in this status until May of 1973. The testimony also shows that usually during or at the conclusion of an investigation of an incident occurring within the prison walls (in this case, the murder of an inmate) anyone implicated in the incident will either be taken before the State District Court if a crime has been committed or before the prison disciplinary committee at the state penitentiary. In this instance, however, the evidence shows that the man murdered was a "snitch" and the reason a disciplinary hearing was not held was because no one would come forward and testify because they were fearful of what might happen if they did.

On May 15, 1972, which was at or shortly after the conclusion of the murder investigation, a letter was written to the warden by Gordon D. Wright, Chief of Security, which reads as follows:

"In view of all the trouble, as records will bear out, between these two inmates, 77519 Chester D. McDonald and inmate 77520 Delbert Hooper, and all the trouble they have caused the Institution, it is suggested that these two inmates be taken out of the inmate population permanently, until they have a different outlook toward their fellow man and have a definite change of attitude.

"The above two inmates are strong-arm men, gambling, loaning money, and they have a gang of inmates that does their dirty work. It is suggested that they be run to Maximum Segregation for a period of one (1) year and then placed on Administrative Segregation for the protection of other inmates, and maybe by that time they will loose control of their gang."

The prison records show that on the 18th of May, 1972, the plaintiff was placed in maximum segregation.

The prison disciplinary records also show that prior to the foregoing events the plaintiff had a long record of various infractions of prison rules. These included, among others, assaulting an inmate with a knife, in which he admitted guilt, stealing and refusing a direct order, in which he denied guilt, having an inmate commit oral sodomy, in which he admitted guilt, and needle marks on his arm, which the plaintiff stated were plasma marks. The defendant Anderson also testified that before he received the letter dated May 15, 1972, from the Chief of Security, he was aware that the plaintiff was a strong-arm man, a gambler and was loaning money; that he had several disciplinary reports on his record and that he was locked up so that he could not endanger anyone else.

In regard to the plaintiff's propensities, the record is replete with evidence that he is a violent man. He was convicted of raping two twin girls, killing their brother, and has three murder convictions on his record, for which he is serving three life sentences. One security officer described him as a cold-blooded killer who, with others during the prison riot in the summer of 1973, ran him [the security officer] out of the mess hall with a knife.

The uncontroverted evidence is that the defendant was never taken before the prison disciplinary committee and the Court finds that he was not. The Court also finds that the plaintiff was placed in administrative segregation initially during the course of a murder investigation in which there was reason to believe that the plaintiff was implicated. The Court further finds that the plain-

tiff is a violent man; that he has been convicted of a series of violent crimes and had a propensity for violence prior to being placed in the segregation status of which he complains. He also had a long history of previously having been brought before the disciplinary committee.

The Court further finds that the plaintiff was placed in a segregated status not for punishment but for the protection of other inmates and employees of the Oklahoma State Penitentiary and in order to break up what was thought to be a ring of inmates who were using strong-arm tactics, loaning money and gambling in violation of prison rules.

■■ The record also shows and the Court finds that there is no evidence that any of these defendants personally deprived the plaintiff of an opportunity to appear before the disciplinary committee. The plaintiff testified and the Court finds that the defendants were named as defendants simply because they were officials of the Oklahoma State Penitentiary. Neither is there any evidence in the record to show that these defendants personally deprived plaintiff of access to the court, the prison law library or personally restricted his mailing privileges and the Court finds that they did not. It is a fundamental rule of law that an official will not be liable for damages in a civil rights case unless it is demonstrated that he directly and personally participated in the conduct under color of state law which deprived the plaintiff of his rights, privileges or immunities as secured to him by the federal constitution. Indeed it is an essential element in a case of this kind that the particular defendant be personally involved in the denial of the constitutional right. *Battle v. Lawson,* 352 F.Supp. 156 (W.D.Okl.1972); *Townes v. Swenson,* 349 F.Supp. 1246 (W.D.Mo.1972); *Campbell v. Anderson,* 335 F.Supp. 483 (D.Del.1971); *Christian v. Anderson* (10th Cir. 1972) Case

No. 74–1213; *Ellerman v. McCracken* (10th Cir. 1974) Case No. 74–1258.

■ The recent decision by the Supreme Court of the United States in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) 42 U.S.L.W. 5190 (June 26, 1974) lays down the standards to be applied in prison disciplinary cases. Those standards were not followed in this case. Those standards, however, are prospective only and the law which governs this case is that which prevailed in this circuit prior to *Wolff.* See *Kniss v. Britton,* Case No. 73–1559 (10th Cir.) decided October 9, 1974. The question to be determined is whether or not the imposition of punishment on the complaining party was arbitrary, abusive or capricious. In the present case the evidence shows and the Court finds that the plaintiff was confined, not for punishment purposes, but for the protection of other inmates and employees of the Oklahoma State Penitentiary. The Court finds that under the circumstances this action was not arbitrary, abusive or capricious. *Evans v. Moseley,* 455 F.2d 1084 (10th Cir. 1972). In *Graham v. Willingham,* 384 F.2d 367 (10th Cir. 1967) our circuit said:

"Appellant is not presently in segregation as a disciplinary control for specific misconduct but as an administrative control relating to inmates considered to be a 'threat to themselves, to others, or to the safety and security of the institution.' Bureau of Prisons Policy Statement, #7400.4, issued 9–9–66. Such a policy is perfectly proper and lawful and its administration requires the highest degree of expertise in the discretionary function of balancing the security of the prison with fairness to the individuals confined. In the case at bar the record reveals that appellant's confinement in segregation is the result of the considered judgment of the prison authorities and is not arbitrary." 384 F.2d 367 at 368.

The Court finds this principal of law to be equally applicable here.

Furthermore the Court finds and concludes that even if it could be said that placing the plaintiff in lockup status in this case did constitute a form of punishment which violates the pre-*Wolff* standards, there is no evidence showing that these defendants were personally responsible for depriving the plaintiff of an opportunity to appear before the prison disciplinary committee or even if they were so responsible there is no evidence in the record of any monetary damages to which plaintiff is entitled and the Court finds that no damages have been proved.

The Court accordingly finds that the plaintiff's civil rights have not been violated under color of state law by any of the defendants in violation of any provision in the constitution and plaintiff's action should be dismissed and judgment should be entered accordingly.