Samuel G. RUCKER, Plaintiff,

v.

John GRIDER, Deputy Director, Oklahoma State Department of Corrections and Pete Douglas, Superintendent, Lexington Assessment and Reception Center, Defendants.

No. Civ–80–576–D.

United States District Court,
W. D. Oklahoma.

Aug. 21, 1980.

Samuel G. Rucker, pro se.

Jan Eric Cartwright, Atty. Gen. by Janet L. Cox, Asst. Atty. Gen., Jo Glenn, Staff Atty., Dept. of Corrections, Oklahoma City, Okl., for defendants.

## OPINION AND ORDER

DAUGHERTY, Chief Judge.

This action has been brought by plaintiff, an inmate at the Stringtown Correctional Center, Stringtown, Oklahoma, alleging deprivation of his constitutional rights in violation of 42 U.S.C. § 1983. Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1343(3).

Plaintiff's complaint contains a single count, as follows:

"Plaintiff was denied meaningful access to the courts as guaranteed by the First Amendment to the United States Constitution as well as the 'Due Process And Equal Protection Of The Law' which is guaranteed by the Fourteenth Amendment to the United States Constitution."

Plaintiff asserts that he entered guilty pleas to four (4) separate charges in Tulsa County District Court on July 25, 1979 and was informed that he was entitled to file a written application for withdrawal of his guilty pleas and notice of appeal within ten days. He further asserts that he was transferred from the Tulsa County Jail and received at the Lexington Assessment and Reception Center, Lexington, Oklahoma, on July 30, 1979. Upon arrival there, he alleges that he advised a Unit Manager, Mr. Shivers, that he wished to file a written application for withdrawal of guilty plea and that he only had ten days from July 25, 1979 to file such application. He states that he requested the use of a telephone to attempt to make arrangements for an attorney and the use of the law library in the event he was unable to obtain an attorney to file the necessary motions. He alleges that Mr. Shivers informed him that Department of Corrections policy prohibited inmates incarcerated at the Lexington Assessment and Reception Center to use the telephone or law library or to have visits from persons other than their attorneys. Plaintiff asserts that incarceration at the Lexington Assessment and Reception Center extends for a period of two to three weeks and therefore the ten days in which plaintiff had to file written application for withdrawal of his guilty pleas necessarily expired before any meaningful motions could be filed by him. He concludes that the result is a violation of his First and Fourteenth Amendment rights under the United States Constitution.

In order to develop an administrative record to assist the court in determining preliminary issues, the court thereafter entered an order directing officials responsible for the operation of the Lexington Assessment and Reception Center to undertake a review

of the subject matter of plaintiff's complaint and to file with the court a verified written report of that review. This procedure is in compliance with guidelines set out in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

█ The report of the Department of Corrections of the State of Oklahoma, duly verified, finds that plaintiff's statement of the facts with regard to his first few days in the Lexington Assessment and Reception Center are substantially accurate. Attached to the report is the statement of Orientation Case Manager G. W. Shivers, who states that he advised plaintiff that law library personnel would make necessary forms available to him and assist him if needed. Mr. Shivers states that he then turned plaintiff's problem over to "whoever the Law Library officer was at that time," and heard no more about it until plaintiff wrote to him several months later requesting information concerning the regulations. Also attached to the report are copies of the four (4) Judgments and Sentences entered in the Tulsa County, Oklahoma District Court, pursuant to which plaintiff was ordered imprisoned. It is noted that after entering pleas of guilty in each of those cases, plaintiff waived his right to be retained in Tulsa County for a period of ten days and elected to begin his terms of imprisonment immediately.

Also attached to the report are copies of Field Memoranda LAR–090103–01, LAR–030201–03, LAR–070302–03 and LAR–060102–01. Memorandum LAR–090103–01 has to do with law libraries and inmates' access to the courts, with legal services and legal reference materials. It is provided that any inmate wishing to use the law library either at Joseph Harp Correctional Center or the Oklahoma State Penitentiary, the two most comprehensive law libraries within the corrections department, should notify his case manager. A transfer request would then be processed. The memorandum also notes that inmates desiring to use the Lexington Assessment and Reception Center law library shall be afforded reasonable access to those facilities. It is further noted that:

"The Assessment and Reception Unit and Correctional Center segregation/high custody areas will be visited five days a week by the Case Manager responsible for the law library."

Memorandum LAR–030201–03 prescribes inmate rights and responsibilities but does not specifically address any of the issues raised by plaintiff herein. Memorandum LAR–070302–03 prescribes visiting regulations. It begins:

"Due to the shortness in duration allotted Assessment and Reception processing, there will be no visiting privileges afforded Assessment and Reception residents as a general rule . . . ."

Exceptions are provided for attorneys of record, clergymen, and others on an emergency basis.

Memorandum LAR–060102–01 describes the inmate reception process and reassessment guidelines.

The verified report of the Oklahoma Department of Corrections indicates that plaintiff was visited by the staff member in charge of the law library and was provided legal forms requested by him, although plaintiff later stated to Mr. Shivers that they were not the correct forms. In addition, the report states that plaintiff asked only Mr. Shivers for permission to use the law library and that no such request was made of the staff member in charge of the law library when plaintiff was visited by him. The report continues to the effect that plaintiff at no time requested permission to have a visitor or to make a telephone call. The report concludes to the effect that if the law library Case Manager determines that an inmate has a special need to use a law library, such use is arranged by memorandum through either the Director of the Assessment and Reception Center or the Deputy Warden.

The following statement appears in *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974):

"We start with the familiar proposition that '[l]awful incarceration brings about

**620**

the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system'. *Price v. Johnston*, 334 U.S. 266 [68 S.Ct. 1049, 92 L.Ed. 1356] ... (1948). See also *Cruz v. Beto*, 405 U.S. 319 [92 S.Ct. 1079, 31 L.Ed.2d 263] ... (1972) .... It is in light of these legitimate penal objectives that a court must assess challenges to prison regulations based on asserted constitutional rights of prisoners."

In the same vein, the following appears in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974):

"Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration .... More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention .... Suffice it to say that the problems of the prisons in America are more complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree .... For all of these reasons, courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism ...."

Although the field memoranda supplied to this court make no specific reference to a policy denying inmates in the Assessment and Reception Unit the right to make telephone calls except in emergencies, the report of the Department of Corrections and the statement of Orientation Case Manager Shivers conceded that such a policy does in fact exist. Policies denying visits other than by counsel of record and clergymen, except in emergencies, and denying direct access to the law library except in instances of special need, are detailed in the field memoranda. Justification for these restrictions is stated as the reasonably short period of time (14 to 17 days) allotted for assessment and reception processing.

As is noted above, plaintiff voluntarily entered guilty pleas to four separate charges in Tulsa County District Court. Plaintiff was represented by counsel at arraignment and sentencing proceedings. Plaintiff voluntarily elected to be immediately turned over to the custody of the Department of Corrections and transported to the Lexington Assessment and Reception Center. When he arrived there, five days after the entry of the judgments and sentences in the four cases in which he pled guilty, he asked the Orientation Case Manager for permission to use the library. The rules of the Assessment and Reception Unit were explained to him at that time. Subsequently, when he was visited by the staff member in charge of the institution law library, he made no further request to use the law library. Neither did he request permission to make a telephone call. Further, plaintiff did not mention any problem to his case manager, who stated that had she been aware of such a problem, she would have immediately taken steps to assist him.

The restrictions placed upon persons undergoing assessment and reception processing are clearly justified. Without them, completion of such comprehensive processing in an orderly manner would be impossible. The regulations and implementing procedures are designed to provide for exceptional circumstances, such as filing deadlines and the like. The personnel of the Assessment and Reception Center, however, can not be expected to anticipate such problems, or to solve them when they are not communicated to the proper persons when opportunities are presented to do so. This court finds that no constitutional deprivations result from the application of the regulations of the Assessment and Reception Center described herein.

Defendants are, respectively, the Deputy Director of the Oklahoma State Department of Corrections and the Superintendent of the Lexington Assessment and Reception Center. Plaintiff asserts that defendant Grider is legally responsible for the overall operation of state penal institutions, including Lexington Assessment and Reception Center, and that defendant Douglas is le-

gally responsible for the operation of Lexington Assessment and Reception Center "and for the welfare and movement of all inmates incarcerated at that institution." He makes no specific allegations that either named defendant directed, participated in, condoned or even knew of any action taken with regard to him. It is noted that Mr. Shiever has not been named a defendant in this action.

In the Tenth Circuit, personal participation of defendants is an essential allegation in a § 1983 complaint. *Bennett v. Passic*, 545 F.2d 1260 (20th Cir. 1976); *McCarther v. Grady County, Oklahoma*, 437 F.Supp. 831 (W.D.Okla.1977); *Harbert v. Rapp*, 415 F.Supp. 83 (W.D.Okla.1976); *McDonald v. McCracken*, 399 F.Supp. 869 (E.D. Okla.1974); *Phillips v. Anderson*, 386 F.Supp. 371 (E.D.Okla.1974); *Battle v. Lawson*, 352 F.Supp. 156 (W.D.Okla.1972). In *Kite v. Kelley*, 546 F.2d 334 (10th Cir. 1976), the court affirmed the trial court's directed verdict in favor of supervisory officials. In its discussion of the applicability of the *respondeat superior* doctrine to civil rights actions, the court referred to *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and stated:

"The 'affirmative link' requirement of *Rizzo* means to us that before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations of which the complaint is made." 546 F.2d at 337–338.

In the circumstances alleged in plaintiff's complaint, therefore, the named defendants can not be held liable under the doctrine of *respondeat superior*. Moreover, the court notes that the only person whose actions and omissions are complained of in plaintiff's complaint, Orientation Case Manager Shivers, is not guilty of any violation of plaintiff's constitutional rights and would not be liable to plaintiff even if he had been named in this action, which he was not.

Plaintiff's complaint should therefore be dismissed for the reasons hereinabove stated.

IT IS SO ORDERED.