Winnie MARCHANT, Plaintiff,

v.

CITY OF LITTLE ROCK, ARKANSAS; Walter E. Simpson, Chief of Police; and Albert Renefield, Chief Jail Administrator, All In Their Official and Individual Capacities, Defendants.

No. LR–C–80–156.

United States District Court, E.D. Arkansas, W.D.

Feb. 22, 1983.

Richard Quiggle, Little Rock, Ark., for plaintiff.

Hugh Brown, Asst. City Atty., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

WOODS, District Judge.

### The Pleadings

The complaint based on 42 U.S.C. § 1983 alleges that plaintiff was an inmate of the Little Rock City Jail from September 5–27, 1979. She sued the City of Little Rock, the Mayor, City Manager, Chief of Police, and jail administrator. She claimed the City had a history of indifference to and neglect of jail prisoners and that the other defendants had neglected to properly supervise jail personnel so that medical attention to prisoners was inadequate. The gravamen of plaintiff's individual complaint was that she had not been given her prescribed medication on a regular basis, that some medicine was not given at all, and that she was not given proper medical care during a period of illness. She sought money damages and injunctive relief. During the trial she voluntarily dismissed her case against the Mayor and City Manager.

### Rulings on Motions

At the close of the plaintiff's case, the defendants moved for a dismissal of her case against Albert Benefield. The undisputed proof showed that Mr. Benefield had retired as jail administrator six months before the incidents alleged in the complaint and that he had no part in anything transpiring at the city jail in September of 1979. Plaintiff does not seriously question Benefield's entitlement to a dismissal but moves to substitute Lt. Claude Campbell, the actual jail administrator, as a party defendant. In paragraph B(4) of the complaint (filed

April 4, 1980) Benefield is described as chief jail administrator. Paragraph (B) entitled "Parties" describes the identity, address and position of the plaintiff (par. 2) and the five defendants (pars. 3, 4 and 5).

In paragraph III of the answer, the defendants admitted paragraphs 3, 4 and 5 of plaintiff's complaint. The answer was not correct as to Benefield. The undisputed proof is that Lt. Claude Campbell was the jail administrator during the pertinent period. Plaintiff's counsel says that he was "blindsided" and misled by this answer and was not aware of the mistake until the trial. The answer was filed for all the named defendants on April 24, 1980 by Robert Taylor, Assistant City Attorney, for Jack Magruder, III, City Attorney of Little Rock, Arkansas. Plaintiff's position would be deserving of much more sympathy if defendants had not identified Lt. Campbell as the jail supervisor in answers to interrogatories by defendants filed with the Clerk on May 15, 1980 and served on plaintiff's counsel on May 13, 1980.

This case was set for trial on February 1983 by an order dated October 25, 1982. Between the date the answers to interrogatories were served on plaintiff's counsel and the trial date, a period of two years and nine months elapsed. Until the trial was already in progress, there was no attempt to amend and substitute Lt. Campbell as a party defendant. The problem with such a substitution is that the three-year statute of limitations had already run as to any claim against Lt. Campbell. *Glassoe v. Howell,* 431 F.2d 863 (8th Cir.1970). He had not been served with process, had no opportunity to hire counsel, and had no intimation whatsoever that he would be a party in a trial which had already begun.

 Rule 15(c) Fed.R.Civ.P. covers the relation back of amendments to the pleadings. It provides as follows:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

There is not one iota of proof that the requirements of 15(c) were met as to the substitution of Lt. Campbell as a party defendant. In fact there was no attempt to make such proof. Both the text of the rule and the case law is adverse to plaintiff's position. See *Cohn v. Federal Security Adm.,* 199 F.Supp. 884 (W.D.N.Y.1961); *Cunningham v. U.S.,* 199 F.Supp. 541 (W.D. Mo.1958); *Hall v. Department of HEW,* 199 F.Supp. 833 (S.D.Tex.1960); *Sandridge v. Folsom,* 200 F.Supp. 25 (M.D.Tenn.1959). These cases followed the decisions of the Supreme Court in *Davis v. L.L. Cohen & Co.,* 268 U.S. 638, 45 S.Ct. 633, 69 L.Ed. 1129 (1925) and *Mellon v. Arkansas Land & Lumber Co.,* 275 U.S. 460, 48 S.Ct. 150, 72 L.Ed. 372 (1928). After the decisions in the above cited U.S. District Court cases interpreting Rule 15(c), the Rule was amended in 1966 to provide for a relation back of amendments if certain conditions were met before the statute of limitations had expired. Here these conditions were not met. "Indeed, the very purpose of the 1966 amendment to Rule 15(c) is the protection of the added party's rights by enumerating the conditions that must be satisfied before relation back of the amendment will be allowed." *Travelers Indemnity Co. v. U.S.,* 382 F.2d 103, 106 (10th Cir.1967). The Court of Appeals of this Circuit has held that the requirements of Rule 15(c) must be met before a party can be added after the statute of limitations has expired. *Gridley v. Cunningham,* 550 F.2d 551, 552–53 (8th Cir.1977). As is pointed out in a leading

treatise, Wright and Miller, *Federal Practice and Procedure* § 1498 (1981 Pocket Part):

> In order for an amendment adding a party to relate back under Rule 15(c), the party to be added must have received notice of the action before the statute of limitation has run. Otherwise, the deprivation of the new party's right to invoke a statute of limitation defense might raise a question of procedural due process.

Nor is plaintiff assisted by Rule 25(d)(1) because Benefield was not a party to this suit at the time he retired. He had retired more than a year before the suit was filed. In his post-trial brief, plaintiff argued that Rule 15(b) is applicable to this issue. Such argument is without merit. It is clear from the text of the Rules above cited and from the above authorities that plaintiff's motion to amend her pleadings during the trial and to substitute Lt. Claude Campbell as a party defendant instead of Albert Benefield must be denied. The defendants' motion to dismiss Albert Benefield, which was made and taken under advisement at the close of plaintiff's case, is hereby granted. Plaintiff does not seriously contend that Benefield should remain in the case. Regardless of the pleadings, there is no proof that he had anything whatsoever to do with the incidents of which plaintiff complains. We feel obliged to point out that even if plaintiff had prevailed on the procedural point discussed, *supra,* it is apparent from the findings of fact and conclusions of law hereinafter set forth that she would have lost her case on the merits. Success on the amendment question in the case is not determinative of defendants' entitlement to judgment in their behalf.

## Findings of Fact

1. The plaintiff, Winnie Marchant, is a citizen of the United States and a resident of Pulaski County, Arkansas.

2. The City of Little Rock, Arkansas is a municipality organized and existing under the laws of Arkansas.

3. Walter E. "Sonny" Simpson is the Chief of the Little Rock Police Department, which is located at 700 West Markham, Little Rock, Arkansas.

4. Albert Benefield was not in charge of administration of the Little Rock City Jail at the time this lawsuit was filed on April 4, 1980; but rather he was succeeded by Lt. Claude Campbell who was the jail supervisor during plaintiff's incarceration in September, 1979.

5. The case of *Wilburn v. Simpson, et al.,* LR–C–78–137 and the Consent Judgment that was based upon a stipulated "settlement agreement" entered into by the parties, through their respective attorneys, on September 28, 1979 has no relevance to this case.

6. At approximately 16:15 hours on September 6, 1979, plaintiff was arrested by officers of the Little Rock Police Department at the North Little Rock City Jail.

7. On September 6, 1979, after arrest on the said warrant, the plaintiff was transported to the Little Rock City Jail.

8. On September 7, 1979, plaintiff was brought before the Little Rock Municipal Court (Traffic Division) for a plea to the charges against her. Plaintiff's statements to the Court were construed as a "not guilty" plea.

9. On September 7, 1979 the Judge of the Little Rock Municipal Court (Traffic Division) set the matter for trial on September 27, 1979 and notified plaintiff of the time and date.

10. The plaintiff did not obtain bail for herself from September 7, 1979 through September 27, 1979. She remained in the Little Rock City Jail during that period of time.

11. On September 27, 1979 plaintiff was tried before the Little Rock Municipal Court (Traffic Division) on the charges for which she was arrested.

12. The plaintiff was released from the Little Rock City Jail at 12:00 hours on September 27, 1979.

13. During plaintiff's stay in the Little Rock City Jail from September 6, 1979 through September 27, 1979 the plaintiff was given those prescribed drugs shown on Plaintiff's Exhibits 4 and 4A at the time and on the dates shown on the Exhibits and by the employee named.

14. The plaintiff was taken to the University Hospital, University of Arkansas Medical Center, Little Rock, Arkansas, by the Little Rock Police on September 8, 1979. The plaintiff was examined and treated by a physician at the hospital.

15. On September 12, 1979 the plaintiff refused treatment at the Little Rock City Jail by Dr. John McCullough Smith, the licensed physician under contract to the Little Rock Police Department for the jail.

16. On the evening of September 14, 1979 the Little Rock Police again transported the plaintiff to the University Hospital, University of Arkansas Medical Center, Little Rock, for examination and treatment and the Little Rock Police returned plaintiff to the Little Rock City Jail the same evening.

17. The physician, who is under contract to the Little Rock Police Department, examined plaintiff on September 19, 1979. The physician prescribed medicine for plaintiff on that date.

18. On or about September 17, 1979 the jail personnel became suspicious that plaintiff was not taking her medication and was bartering her drugs for cigarettes.

19. The jail supervisor issued special orders requiring the "jail attendants" to require plaintiff to take her medications and to watch plaintiff until she took her medications.

20. During the time plaintiff was in the Little Rock City Jail, the Little Rock Police Department had John McCollough Smith, M.D. under contract to examine and treat inmates at the Little Rock City Jail. Dr. Smith appeared on Wednesdays and Saturdays for the purpose of examining and/or treating inmates of the Little Rock City Jail.

21. At the time plaintiff was in the Little Rock City Jail, the Little Rock Police Department had in effect a written policy or procedure for the giving of prescribed medications to inmates.

22. The distribution of prescribed medicines each day, at each shift of jail personnel, to inmates is required to be recorded by jail personnel in a log by the Little Rock Police Department.

23. During plaintiff's incarceration in the Little Rock City Jail, the plaintiff was held in a cell area with one shower, one toilet, two wash basins and eight bunks.

24. The Little Rock City Jail is a short-term detention facility to house persons awaiting preliminary hearings on felony charges or awaiting trial on misdemeanor charges.

25. During the period of time the plaintiff was incarcerated in the Little Rock City Jail, the occupants in plaintiff's cell ranged from a low of three (3) persons to a high of fourteen (14) persons during sleeping hours. When the occupancy exceeded 9, extra mattresses were placed on the floor to accommodate the overflow. The juvenile holding cells would be utilized for extra female inmates when available.

26. The chain of command for the Little Rock Jail Personnel is the chief of police, a captain, a lieutenant who is the jail administrator, one or more sergeants, one or more patrolmen or "sworn officers", a civilian jailer or jail matron and cadets. The position of civilian jailer did exist at the time plaintiff was incarcerated in the Little Rock City Jail. Each person in the chain of command is trained on the job.

27. The defendant, Walter E. Simpson, Chief, adequately supervised the officers and men and women under him who were responsible for care and maintenance of the female inmates.

28. The captain, the jail supervisor, Lt. Claude Campbell, the sergeants, the sworn officers who were in the chain of command and who served during September, 1979, were all adequately supervised by each of their respective superiors.

29. Lt. Claude Campbell was not made a party defendant to this claim.

30. Any acts or omission by the defendants, or any of them, would be under color of law.

31. The plaintiff has not proven a history of indifference to and neglect of the medical needs of prisoners incarcerated in the Little Rock jail facility.

32. The plaintiff has not proven the defendants, or any of them have failed and/or neglected to perform any of their duties to supervise jail personnel so that medical treatment or medication was unreasonably denied to prisoners at the Little Rock City Jail.

33. The plaintiff has voluntarily dismissed defendants Hubbell and McMullin.

34. Jail personnel at the Little Rock City Jail continuously dispensed prescribed medicines to plaintiff during her incarceration in the Little Rock City Jail from September 6, 1979 through September 27, 1979.

35. The jail personnel substantially complied with the disbursing to plaintiff the prescribed dosages of her prescribed medicines.

36. The jail matrons did occasionally fail to give prescribed medicines to plaintiff from time to time.

37. The plaintiff has not proven that any damages resulted to her as a result of any failure on the part of jail personnel to occasionally disburse medicines to plaintiff.

38. The City of Little Rock and the other defendants do otherwise provide adequate medical services and care for prisoners of the Little Rock City Jail through accessibility to a hospital and visiting licensed physician.

39. Plaintiff has made no proof that defendants have denied any other prisoners reasonable and adequate medical care and services.

*Conclusions of Law*

1. The plaintiff failed to prove any claim against the defendants, or any of them, and her complaint should be dismissed.

2. The plaintiff was a pre-trial detainee during her incarceration in the Little Rock City Jail from September 6, 1979 through September 26, 1979 and to some point on September 27, 1979.

■ 3. The Eighth Amendment has no application to plaintiff's incarceration as a pre-trial detainee in the Little Rock City Jail. See *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447. "The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright,* 430 U.S. 651, 671–72, n. 40, 97 S.Ct. 1401, 1412–13, n. 40, 51 L.Ed.2d 711.

4. The jail conditions to which plaintiff was subjected did not rise to a violation of plaintiff's rights of due process under the Fourteenth Amendment.

■ 5. The proof shows that at most the jail matrons were negligent in failing to give plaintiff each and every dosage of her prescribed medication. The supervisor of these matrons was Lt. Claude Campbell, who was not sued in this complaint. There is no indication that the other defendants had "the personal involvement" which is required before immediate supervisors can be held liable in a Section 1983 action.[1] "Section 1983 actions are unlike common law tort actions in that the mere right of a superior to control his subordinates does not justify holding him liable for any unconstitutional acts of subordinates."[2] The Supreme Court made this perfectly clear in

---

1. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) ("affirmative link"); *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir.1981); *Jones v. Denton,* 527 F.Supp. 106, 109 (S.D.Ohio 1981) ("personally participated"); *Carter v. Parsons,* 526 F.Supp. 297 (N.D.N.Y.1981); *Rucker v. Grider,* 526

F.Supp. 617, 621 (W.D.Okl.1980) ("personally participated").

2. L. Friedman, "*Parratt v. Taylor:* Opening and Closing the Door on Section 1983," 9 Hastings Const.Law Quarterly 545, 550 (1982).

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "By our decision in *Rizzo v. Goode,*[3] we would appear to have decided that the mere right of control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." Quite obviously the chief of police had no personal involvement in the dispensation of prescription drugs on a day to day basis. There is no showing that the rules and regulations promulgated by the department covering the giving of prescription drugs were inadequate in any respect. The chief had no contact with the matrons who dispensed the drugs. There is no testimony to show any default on his part in the way in which he generally supervised the detention facility. In *Rizzo v. Goode, supra,* the Supreme Court refused to hold the Mayor of Philadelphia responsible for the isolated conduct of certain police officers on the beat.

> If he did not order the specific acts (or omissions), a principal or superior could be liable under the following circumstances: (1) if the superior establishes or promotes a policy "which sanctioned the type of action which caused the violations";[4] (2) if the superior fails to perform a specific statutory duty that leads to the injury,[5] (3) if the superior fails to perform a duty arising from actual knowledge and that failure leads to a constitutional injury;[6] and (4) if the superior fails to establish reasonably adequate protective procedures when he should have known of constitutional dangers to persons coming in contact with his agents.[7]

L. Friedman, "*Parratt v. Taylor:* Opening and Closing the Door on Section 1983."[8] None of these circumstances are present in the case at bar.

**3.** See note (1), *supra.*

**4.** *Duchesne v. Sugarman,* 566 F.2d 817, 831 (2d Cir.1977).

**5.** *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978).

**6.** *Hampton v. Hanrahan,* 600 F.2d 600 (7th Cir. 1979); *Byrd v. Brishke,* 466 F.2d 6 (7th Cir.

■ 6. While simple negligence may serve as a foundation for a § 1983 claim, not every negligent deprivation of a prisoner's property or rights amounts to a violation of due process under the Fourteenth Amendment. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In the latter case there was a claim of insufficient medical care on behalf of a convicted felon incarcerated in the Texas State Prison who was thus in a position to invoke the Eighth and Fourteenth Amendments:

> Similarly, in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

> . . . . .

> A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act. At 105–107, 97 S.Ct. at 292–293.

1972); *Redmond v. Baxley,* 475 F.Supp. 1111 (E.D.Mich.1979).

**7.** *Withers v. Levine,* 615 F.2d 158 (4th Cir. 1980); *Dewell v. Lawson,* 489 F.2d 877 (10th Cir.1974).

**8.** See note 2.

The case at bar bears certain similarities to an Eighth Circuit case where a prison guard negligently flushed a bat down a toilet after it had bitten a prisoner. As a result, the latter had to receive painful rabies shots because the bat could not be medically tested. "However, appellant's complaint, even when construed liberally in his favor, alleges nothing more than negligent or inadvertent conduct. His complaint may reflect a colorable tort claim in state court, but falls short of stating facts sufficient to make out a colorable claim of federal constitutional magnitude.". *Ronnei v. Butler,* 597 F.2d 564, 566 (8th Cir.1979). See also *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) where imprisonment of plaintiff by mistake over long holiday weekend did not rise to status of constitutional deprivation.

7. In this case the matrons were to some extent negligent in their dispensation of drugs to the plaintiff. But I find that they acted in good faith, as did the jail supervisor Campbell. If these individuals had been sued by the plaintiff, based on the proof adduced in this case, they would have been entitled to qualified immunity as prison officials. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison officials negligently lost mail). See also *Ronnei v. Butler, supra* (rabid bat case) where the Eighth Circuit held that prison officials were entitled to good faith immunity in a negligence action brought under 42 U.S.C. § 1983. "There is nothing in appellant's complaint or inferable therefrom which indicates that he was the victim of intentional or purposeful denial of constitutional rights." *Id.* at 566.

8. The named defendants have no liability in this case by reason of *respondeat superior. Respondeat superior* has no application in civil rights cases brought under 42 U.S.C. § 1983. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

9. Proof by plaintiff that her jailers occasionally failed to give her the prescribed dosages of medicines does not amount to or infer in the City of Little Rock a policy of neglect to the medical needs of prisoners, as required by *Monell v. Dept. of Social Services, supra.*

10. The plaintiff's claim for declaratory relief is moot.

11. The plaintiff's claim for injunctive relief is moot.