**The FIRST NATIONAL BANK OF TEKAMAH, NEBRASKA, Appellee,**

v.

**Orville E. HANSEN and Virginia Hansen, Appellants.**

No. 83–1223.

United States Court of Appeals, Eighth Circuit.

March 23, 1983.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

ORDER

For the reasons stated in No. 83–1158, 702 F.2d 728 (8th Cir.1983), this cross-appeal is dismissed.

It is so ordered.

**Eddy Ray MESSIMER, Stephen Hughes, Dennis Curtis, David Vickers, Billy Corbit, Jerry McKee, and all similarly situated, Appellants,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 82–1481.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1983.

Decided March 25, 1983.

Wendell L. Griffen, Little Rock, Ark., for appellants.

Steve Clark, Atty. Gen. by C.R. McNair, III, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before HEANEY, McMILLIAN and AR-NOLD, Circuit Judges.

1. The reference is to the Designated Record.

ARNOLD, Circuit Judge.

The plaintiffs, inmates confined in the Protective Custody Unit at the Cummins Unit of the Arkansas Department of Correction, appeal the dismissal of their civil rights complaint for failure to state a claim upon which relief can be granted. We reverse.

I.

We are initially confronted with the argument that the plaintiffs have waived their right to appeal. The complaint was filed on January 28, 1982. That same day, the Magistrate recommended to the District Court that the complaint be dismissed for failure to state a claim upon which relief can be granted, on the ground that the plaintiffs had failed to allege that Lockhart, the Director of the Arkansas Department of Correction and the sole defendant, was directly involved in the matters about which they complained. A copy of the recommendation was sent to the plaintiffs, along with a letter advising them that:

> [a]ny party may serve and file written objections to this recommendation. Objections should be specific, and should include the factual or legal basis for the objection. An original and one copy of your objections must be received in the office of the District Judge no later than February 8, 1982. The copy will be furnished to the opposing party.

D.R. 9.[1] The plaintiffs neither filed nor served any objections. On April 12, 1982, the District Court adopted the Magistrate's recommendation without change and entered an order dismissing the complaint.

Lockhart argues that the plaintiffs, by failing to make a timely objection to the Magistrate's recommendation, waived their right to appeal the District Court's order. We disagree.

In *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202 (8th Cir.1983), the plaintiff had failed to file a timely objection to the Magistrate's recommendation that the com-

plaint be dismissed for failure to comply with discovery orders and for failure to prosecute, and the District Court adopted the recommendation and dismissed. The defendant argued that the plaintiff was barred from appealing the dismissal to this Court. We held that the appeal was not barred. We observed that the statute, 28 U.S.C. § 636(b)(1)(B) (Supp. V 1981), did not say that failure to object would result in a waiver, and that the plaintiff had not been given clear notice that such a result would follow. However, we left open the question whether the result would be the same if a pure question of historical fact were involved or if the plaintiff had been clearly informed that failure to object would bar its appeal to this court.

The plaintiffs in this case have not waived their right to appeal. The question whether a complaint states a claim upon which relief can be granted is one of law, not fact. Moreover, the plaintiffs had no notice that failure to object would bar their appeal; the Magistrate's letter merely said that "[a]ny party *may* serve and file written objections," and the language of Rule 23 of the Rules of the United States District Courts for the Eastern and Western Districts of Arkansas also is permissive.[2] Thus, we must consider the dismissal of the complaint on the merits.

## II.

The plaintiffs' complaint, which was brought under 42 U.S.C. § 1983, seeks only declaratory and injunctive relief and sets forth a number of specific factual allegations to support the plaintiffs' claims that they have been denied their rights under the First, Eighth, and Fourteenth Amendments. The plaintiffs claim that the "defendants," in violation of a Department of Correction regulation,[3] arbitrarily, capriciously, and maliciously moved the protective custody unit at Cummins from the two cell blocks in which it had been housed to an open barracks, and that, as a result, the plaintiffs were assaulted and harassed by and subjected to homosexual advances from other protective custody inmates. They further allege that the "defendants" failed to segregate effectively protective custody inmates from general population inmates, and that many assaults have resulted. The plaintiffs also claim that protective custody inmates are placed in solitary confinement with general population inmates without any prior review of prison records to determine whether the inmates are suitable cellmates and that, as a result, plaintiff Messimer was assaulted by his cellmate. Finally, the plaintiffs allege that the "defendants" arbitrarily placed plaintiff Messimer in solitary confinement because he had assisted other inmates in filing lawsuits against the prison.

The District Court dismissed the complaint because

> [t]he doctrine of *respondeat superior* is inapplicable to actions brought under § 1983. *See, Rizzo v. Goode,* 423 U.S. 362 [96 S.Ct. 598, 46 L.Ed.2d 561] (1976); *Cotton v. Hutto,* 577 F.2d 453 (8th Cir.1978). Here, plaintiffs seek to hold the defend-

2. Rule 23 VIII. C. provides in pertinent part:
   When a Magistrate files proposed findings or recommendations with the Court, he shall mail a copy to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such proposed findings, recommendations, or order.

3. Under section 837 of the Administrative Regulations, State of Arkansas, Department of Correction, it is said to be the policy of the Department
   [t]o provide at each maximum-security correctional center a Protective Custody Unit—a designated area containing adequate housing space which is separate from contact with the general and disciplinary segregation populations.
   The regulation goes on to explain that
   [t]he Protective Custody Unit designated by each institution shall be physically divided into two sections. Section one of the unit shall be for inmates who are slight in stature and/or generally preyed upon by the general population. Section two shall be for inmates who are large or big in stature, or who are more institutionally sophisticated, and who need protective custody as a result of their own activities or affiliations within the general population. These two groups of inmates shall be kept separated at all times.
   Supplemental Brief for Appellants at App. 1.

ant liable by virtue of his position as director of the Department and fail to allege any direct involvement on his part in the decision to move the location of the protective custody inmates.

D.R. 12.

■ While we agree with the District Court that a defendant cannot be held liable under § 1983 on the basis of the doctrine of *respondeat superior,* we believe the complaint does allege Lockhart's direct involvement in the conditions about which the plaintiffs complain. For example, the plaintiffs allege that "[d]efendants has [sic] all protective custody inmates confined together now in violation of the administrative regulations . . . ." D.R. 4. This must be an allegation that Lockhart, the only named defendant, is directly involved in confining all the protective custody inmates together.

The State argues that even if the complaint alleges Lockhart's direct involvement, "administrative decisions concerning the Cummins Unit of the Arkansas Department of Correction are made by the warden of that unit and not appellee as Director of the Department of Correction," Brief for Appellee at 2, and that Lockhart could be held responsible for the Warden's decisions only under the doctrine of *respondeat superior.*

In *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the plaintiffs alleged that police officers in Philadelphia were unconstitutionally mistreating citizens. The Supreme Court held that the District Court could not enjoin city officials and the Police Commissioner since

> there was no affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct.

*Id.* at 371, 96 S.Ct. at 604. We recognized this principle in *Cotton v. Hutto,* 577 F.2d

453 (8th Cir.1978) (per curiam). In *Cotton* the plaintiff sought damages from the warden, alleging that he had been subjected to a disciplinary proceeding for refusing to change a hair style which, according to the plaintiff, had religious significance. We held that the complaint failed to state a claim for relief against the warden, because a prison guard instituted the disciplinary action and the warden was "not alleged to have had any knowledge of, or connection with, this incident." *Id.* at 455.

Here, however, the plaintiffs are not complaining about isolated instances of alleged mistreatment; they are complaining about policy decisions made by those in charge of the prison. Lockhart has a statutory duty to "[a]dminister the Department [of Correction] and supervise the administration of all institutions, facilities and services under the Department's jurisdiction." Ark.Stat.Ann. § 46–105(a) (1977). The State conceded at oral argument that Lockhart has authority to change policies instituted by the warden of the Cummins Unit. Thus, Lockhart may be responsible for his own failure to act.

Like the First Circuit in *Dimarzo v. Cahill,* 575 F.2d 15 (1st Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978),

> We are faced with a situation where the . . . [Director of the Department of Correction] has statutory responsibility over precisely the conditions giving rise to the [alleged constitutional] violations. We are not confronted with sporadic incidents, over which the . . . . [Director] might properly claim to have no knowledge or control.

*Id.* at 17 (footnote omitted). Similarly, we have held that a sheriff who had a statutory duty to supervise a jail was "liable for jail conditions even though he may not have had actual knowledge of them." *Tatum v. Houser,* 642 F.2d 253, 254 (8th Cir.1981) (per curiam) (citations omitted). Even if actual knowledge were required,[4] it is clear that

---

4. *Compare Villanueva v. George,* 659 F.2d 851, 854–55 (8th Cir.1981) (en banc) (where pre-trial detainee sued correctional officers for damages, alleging that conditions of his confine- ment violated the Fourteenth Amendment, the question was whether the officers had "knowledge of the fact that his conditions of confinement were punitive and yet refused to remedy

Lockhart now knows of the conditions about which the plaintiffs complain, and, if those conditions are unconstitutional, he has a duty to correct them.

### III.

We intimate no opinion about the merits of the plaintiffs' claims. We merely hold that the District Court erred in dismissing the complaint for failure to state a claim upon which relief can be granted. Whether the complaint could have been dismissed on motion for summary judgment is not a question before us on this appeal.

The Court expresses its appreciation to appointed counsel for appellants for his diligent service.

Reversed and remanded.

such."), *with Jerry v. Francisco,* 632 F.2d 252, 256 (3d Cir.1980) (per curiam) (Adams, J., concurring) ("actual knowledge is not always required for other types of § 1983 violations. The liability of supervisory prison personnel under § 1983 turns on whether the prisoner complains about a sporadic incident, which may be beyond the control of a supervisor, or about general conditions and policies properly within the supervisory purview of the officer in charge of the prison.").