741 F.2d 201
 Winnie MARCHANT, Appellant,
v.
CITY OF LITTLE ROCK, ARKANSAS; Walter E. Simpson, Chief of
Police; Albert Benefield, Jail Administrator; Webster
Hubbell, Mayor; and Carlton McMullin, City Manager; All In
Their Official and Individual Capacities, Appellees.
 No. 83-1493.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1984.
Decided Aug. 21, 1984.
 
 Richard Quiggle, Little Rock, Ark., for appellant.
 R. Jack Magruder III, City Atty., by Hugh L. Brown, Asst. City Atty., Little Rock, Ark., for appellees.
 Before ROSS, JOHN R. GIBSON and BOWMAN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 Winnie Marchant brought this action under 42 U.S.C. Sec. 1983 against the City of Little Rock and four city employees both in their official and individual capacities. The named defendants included the chief of police, the chief jail administrator, the mayor, and the city manager. As the basis of her action, Marchant alleges injuries suffered while she was a pretrial detainee at the Little Rock Detention Center (the Little Rock jail).
 
 
 2
 The case was tried in the District Court.[1] Marchant voluntarily dismissed her complaint as to the mayor and the city manager. The District Court found in favor of the remaining defendants--the City of Little Rock, the chief of police, and the chief jail administrator--and entered judgment accordingly. Marchant v. City of Little Rock, 557 F.Supp. 475 (E.D.Ark.1983). Marchant appeals from that judgment.
 
 
 3
 Marchant was arrested by Little Rock authorities on September 6, 1979 for failure to appear in municipal court on an automobile license charge. On September 7, 1979 Marchant was brought before a municipal judge, at which time she claimed that she had appeared on the automobile license charge on December 7, 1978 and that she then was informed by court personnel that they could not find the papers relating to her case. The judge treated these assertions as a plea of not guilty. The case was docketed for trial on September 27, 1979 and bond was set at $400. Marchant failed to post bond and was held in the Little Rock jail until her trial date. She was released on September 27, 1979, apparently having paid a fine on the charges against her.
 
 
 4
 At the time she was jailed, Marchant had in her possession a number of medications that had been prescribed for her. These medications were placed in a locked cabinet at the jail and were to be dispensed to Marchant by jail personnel. On September 8, 1979 Marchant was taken to the University of Arkansas Medical Center (UAMC) because she complained of an inability to urinate. After treating Marchant, a UAMC physician prescribed antibiotics for her and she was returned to the jail. Marchant again was taken to the UAMC on September 14, 1979. Different antibiotics were prescribed and Marchant was returned to the jail.
 
 
 5
 The critical issues on appeal relate to Marchant's claim of a constitutional deprivation due to the manner in which her medications were dispensed. Marchant alleges and the record suggests that some of the above-mentioned medications were not dispensed according to prescription and doctors' orders, that some of the medications were not dispensed at all, and that one medication prescribed for another inmate was dispensed to Marchant. Assuming that her allegations concerning the manner in which her medications were dispensed are true, we conclude that Marchant has failed to establish other necessary elements of a Sec. 1983 claim against the defendants. For the reasons stated herein, the result reached by the District Court therefore is affirmed.
 
 
 6
 As a preliminary matter, we address Marchant's argument that the District Court abandoned its responsibility to make its own factual findings and legal conclusions by adopting defendants' proposed findings of fact and conclusions of law. As Marchant points out, for a district court to adopt a party's proposed findings and conclusions verbatim is a strongly disfavored practice. See Askew v. United States, 680 F.2d 1206 (8th Cir.1982). Nevertheless Marchant's argument is untenable. Although most of the District Court's published findings and conclusions are identical to those proposed by defendants, they are not a verbatim adoption of defendants' proposals. The District Court altered several of defendants' proposed findings and conclusions and made additional ones of its own accord. This clearly indicates that the District Court did not merely mechanically adopt defendants' proposed findings and conclusions, but rather brought its critical judgment and knowledge of the case to bear on this vitally important matter.
 
 
 7
 In order to hold a municipality liable under Sec. 1983, a plaintiff must establish that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's officers]," Monell v. Department of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), or that a "constitutional deprivation [was] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91, 98 S.Ct. at 2035-36. In her complaint, Marchant stated that the City of Little Rock has a history of indifference and neglect to the medical needs of prisoners in its jail, and that such indifference and neglect amounts to a city policy of medical mistreatment of prisoners. The record in this case does not, however, contain proof of such a policy. Since Marchant has failed to show that prescription medications were improperly dispensed to her pursuant to city policy or custom, there can be no recovery against the City of Little Rock, and we affirm the judgment below in its favor.
 
 
 8
 Marchant also alleges that the chief of police and the chief jail administrator negligently supervised jail personnel with respect to the dispensing of prisoners' prescription medications. This claim of negligent supervision was lodged against the chief of police and the chief jail administrator in both their official and individual capacities.
 
 
 9
 A Sec. 1983 plaintiff must establish the existence of a city policy or custom under Monell, supra, in order to recover against city employees in their official capacities. See id. at 690 n. 55, 98 S.Ct. at 2035 n. 55; see also Rollins v. Farmer, 731 F.2d 533, 535 (8th Cir.1984). The only city policy alleged by Marchant to have contributed to a constitutional deprivation is one of medical mistreatment of prisoners. We already have determined that the record contains no proof of such a policy. Thus, Marchant has not made out a case under Sec. 1983 against the chief of police or the chief jail administrator in their official capacities. It is necessary, however, to further examine the negligent supervision claims brought against the chief of police and the chief jail administrator in their individual capacities because "when a suit is brought against an official in his or her individual capacity it is not necessary to prove a city-wide policy." Rollins, 731 F.2d at 535.
 
 
 10
 We hold that the chief of police, Walter Simpson, cannot be held liable in his individual capacity for negligent supervision because the alleged instances of improperly dispensing medications, even if true, apparently were isolated instances of which Simpson had no knowledge and to which Simpson was not connected. Cf. Cotton v. Hutto, 577 F.2d 453 (8th Cir.1978) (no claim for damages stated against commissioner of state corrections department under Sec. 1983 where commissioner had no knowledge of or connection to disciplinary action over which plaintiff brought suit). Simpson was far removed from the day-to-day dispensing of prisoners' prescription medications. In fact, the record indicates that there were at least four supervisory levels in the chain-of-command between the non-officer employees who dispensed these medications and the chief of police.[2] Simpson testified that he did not speak with Marchant during her period of incarceration and that he had not otherwise been made aware of her complaints. Simpson also testified that he was unaware of any complaints concerning the dispensing of medications. Moreover there is no proof in the record from which such knowledge could be inferred, e.g., proof of any other prisoner's medication being dispensed in a manner comparable to that alleged by Marchant or of any other complaint to that effect.
 
 
 11
 This is not a case where a constitutional violation is alleged to have occurred as a direct result of specific administrative policies under the control of the defendant. See, e.g., Messimer v. Lockhart, 702 F.2d 729 (8th Cir.1983). In Messimer, several state protective custody inmates sued the director of the state department of corrections, alleging that the warden of the facility in which they were incarcerated had established confinement policies that unconstitutionally deprived them of adequate protective custody. This Court concluded that plaintiffs had stated a claim for injunctive and declaratory relief against the director of the state department of corrections who expressly was required by statute to administer and supervise all aspects of the department of corrections. Id. at 732-33. Plaintiffs' complaint was construed as one concerning "policy decisions made by those in charge of the prison" rather than one concerning "isolated instances of alleged mistreatment." Id. at 732. The circumstances present in Messimer are not present in this case. Rather, this case is analogous to Cotton, supra. We thus hold that Simpson cannot be liable in his individual capacity for negligent supervision, and we affirm the judgment below as to him.
 
 
 12
 Marchant makes an identical claim of negligent supervision agaisnt the chief jail administrator in his individual capacity. We hold that Marchant cannot prevail on this claim if for no other reason than because she sued the wrong person.
 
 
 13
 Marchant's complaint names as a defendant Albert Benefield, chief jail administrator. Although Benefield once was the chief jail administrator, he had retired from that position several months before Marchant was incarcerated at the Little Rock jail. The District Court therefore correctly dismissed Benefield from this suit. The District Court also denied Marchant's motion to amend her pleadings to substitute Clyde Campbell, who actually was the chief jail administrator during the relevant period, as party defendant instead of Benefield. Marchant argues that the District Court should have allowed the amendment.
 
 
 14
 Marchant, however, made no attempt to substitute Campbell for Benefield until after the trial had begun. By this time, the statute of limitations had run as to any claim against Campbell. Therefore, it is essential to Marchant's position that the amendment to substitute Campbell for Benefield, if allowed, relate back to the date of the original pleadings.
 
 
 15
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleadings. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
 
 
 16
 Fed.R.Civ.P. 15(c). The District Court determined that the requirements of Rule 15(c) had not been met and denied Marchant's motion to substitute Campbell as a party defendant.
 
 
 17
 It is true that in numerous documents, some of which were filed with the District Court as late as the week preceding trial, defendants referred to Benefield as being the chief jail administrator during the time Marchant was incarcerated at the Little Rock jail. Finally, in a pretrial brief filed several days before trial, defendants stated that Benefield was not the chief jail administrator during the relevant period. Defendants contend that this continuing misidentification was inadvertent; Marchant insists that it was a deliberate attempt by defendants to mislead her and that, as a result, she could not have discovered the mistake any earlier than she did. Marchant argues that but for defendants' intentionally misleading her, she would have discovered the mistake and would have moved to substitute Campbell for Benefield before the statute of limitations had expired.
 
 
 18
 Marchant's position might be deserving of consideration except for the fact that in answers to interrogatories filed on May 13, 1980 (long before the running of the statute of limitations), defendants gave Campbell's name as day jail supervisor when asked who was responsible for filling prisoners' prescriptions that had been prescribed by UAMC physicians. Although Campbell was not identified as the chief jail administrator in this interrogatory answer and it was the chief jail administrator against whom relief was sought, it is inconceivable that, between May 13, 1980 and September 1982 (when the statute of limitations expired), a reasonably diligent plaintiff would not have ascertained Campbell's official position. After all, Campbell was identified in defendants' answers to interrogatories as the person responsible for filling prisoners' prescriptions obtained at the UAMC and Marchant's lawsuit arose chiefly over the handling of her prescription medications, some of which were prescribed when she was taken from the jail to the UAMC for medical treatment.
 
 
 19
 Having considered Marchant's arguments, we cannot say that the District Court abused its discretion by refusing to allow her to amend her pleadings and to have the amendment relate back. Had the District Court done otherwise, it appears likely that Campbell, who had no notice of a suit against him in his individual capacity prior to the expiration of the statute of limitations or to the commencement of trial, would have been seriously prejudiced in maintaining his defense on the merits.
 
 
 20
 Marchant also has made a variety of additional claims. These additional claims pertain to medical care, diet, an alleged instance of sexual assault, jail overcrowding, and related jail conditions. We have carefully reviewed the record and cannot say that the District Court erred in finding for all the defendants on each of these claims.
 
 
 21
 Affirmed.
 
 
 22
 ROSS, Circuit Judge, dissenting.
 
 
 23
 I would reverse and remand this case for the purpose of permitting the plaintiff to file an amended complaint naming Mr. Campbell as a party defendant. In my opinion the defendants' misstatements were the principal cause of plaintiff's improper identification of the jail administrator during the period in question.
 
 
 
 [1]
 The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas
 
 
 [2]
 This should not be construed to indicate that the chief of police was so unreasonably isolated from jail operations that he effectively abdicated his general supervisory responsibilities. Simpson testified that he periodically visited the jail and conversed with random inmates for the very purpose of remaining apprised of its general condition and atmosphere. Neither can it be said that the general supervisory structure at the jail was inadequate. The chief of police required all subordinate supervisory officers to be familiar with and enforce the department's published operating guidelines. These guidelines included procedures for handling prisoners' medical needs. All supervisory officers received training for their positions. The chief jail administrator had his office in the jail so that he readily would be available to supervise jail operations