# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1231

_____

| | | |
|---|---|---|
| Hazel L. Wilson, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Steve Northcutt, Individually and in | * | Appeal from the United States |
| his official capacity as Mayor of the | * | District Court for the |
| City of Malvern, Arkansas, et al., | * | Western District of Arkansas. |
| | * | |
| Defendants - Appellants. | * | |
| | * | |
| City of Malvern, Arkansas, | * | |
| | * | |
| Defendant, | * | |

_____

Submitted: October 12, 2005
Filed: March 21, 2006

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Hazel Wilson, a resident of Little Rock, is the owner of two vacant lots in Malvern, Arkansas. Wilson filed this § 1983 action asserting that defendants violated her constitutional rights by constructing a drainage ditch along the street side of her property that causes storm waters to pool on her property, greatly reducing its value, and by retaliating against her for complaining. Named as defendants in the Second

Amended Complaint are Malvern Mayor Steve Northcutt, former and current Street Department Superintendents Ronnie Lytle and Boyd Johnson, Chief Inspector Len Dawson, and the City of Malvern. The individual defendants appeal the district court's denial of their motions for summary judgment on grounds of qualified immunity.[1] We reverse in part.

## I.

In early 1999, responding to complaints of periodic flooding from residents of a predominantly African-American residential area, the City of Malvern Street Department began constructing a drainage ditch along the south side of Veneer Street eastward from Babcock Street toward what the parties refer to as the Veneer Street Creek. Superintendent Lytle testified that, when construction reached the City's right of way on the north side of Wilson's vacant lots at 123 Veneer Street, the crew stopped work to do another project and routed the ditch onto Wilson's lots, "letting the water go somewhere at the time." Lytle said he did not notify Wilson because he did not know who owned the vacant lots.

When drainage water started pooling on her property, Wilson's attorney wrote Mayor Northcutt on May 3, 1999, complaining that the City had entered her property and dug a ditch that reduced the value of the land to zero because it is "water-logged." The letter demanded that the City remove the ditch or pay the prior full value of the property. City Attorney Mark Roberts replied, stating that construction of the ditch was incomplete and the plan included culverts to prevent harm to Wilson's property. In July, the Street Department completed the project, extending the drainage ditch along Veneer Street from Wilson's lots to the Veneer Street Creek.

---

[1]Defendants' brief argues that the district court also erred in denying the City of Malvern's motion for summary judgment. However, the Notice of Appeal did not identify the City as a party to the appeal. Therefore, we do not consider this issue.

On July 19, 2000, Wilson's attorney wrote City Attorney Roberts, stating he had observed the property after several rains and concluded "that the corrective work done in the summer of 1999 has exacerbated the problem." Because the land in front of Wilson's lots was "the lowest point of the ditch," he explained, water was entering the lots from three directions instead of draining into the Veneer Street Creek. Again, Wilson's attorney demanded that the City correct the work or buy the lots. The record on appeal contains no response on behalf of the City.

In addition to ditch construction, the Street Department was responsible for maintaining drainage ditches, which included mowing weeds and bushes that grow naturally, and removing debris. Since its completion in July 1999, Wilson contends, the City has mowed the Veneer Street ditch only once, in June 2004. The overgrowth of weeds and bushes has impeded proper drainage, exacerbating the problem of water pooling on her property. Wilson cites the fact that the City mowed and cleaned a ditch along the north side of Veneer Street in April 2002 as evidence that the neglect of the ditch along her property has been intentional.

Wilson initially filed suit in March 2002. Three months later, the City's Chief Inspector, Len Dawson, ordered the towing of the "Café Fish," a mobile home functioning as a restaurant owned by Wilson's sister. The City later released the vehicle. Some months later, Wilson voluntarily dismissed the lawsuit.

Wilson filed this lawsuit in November 2003 and her Second Amended Complaint in November 2004. Her principal federal claim was that construction of the faulty drainage ditch constituted an unlawful taking of property and a denial of due process in violation of the Fifth and Fourteenth Amendments. The district court dismissed those claims as premature because Wilson did not exhaust adequate state remedies for obtaining compensation. That ruling is not before us.

Wilson further claimed that defendants (i) violated the Equal Protection Clause by constructing the ditch because she is African-American; (ii) violated the First Amendment by extending the ditch in July 1999 in retaliation for her first complaint; (iii) violated the Equal Protection Clause and her First Amendment rights by allowing weeds and bushes to grow in the ditch in retaliation for her complaints; and (iv) violated the Equal Protection Clause and her First Amendment rights by towing the Café Fish in retaliation for Wilson exercising her right to sue. The district court dismissed the equal protection claim regarding the Café Fish towing because Wilson's sister is the person injured by the alleged selective enforcement. The court denied summary judgment on the remaining claims on the ground that genuine fact disputes exist regarding defendants' alleged discriminatory and retaliatory motives.

## II.

Qualified immunity protects government officials from the costs of trial and the burdens of broad discovery unless their discretionary acts violated clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). A defendant's claim of qualified immunity is determined by an objective standard under Harlow. This prompts the difficult question of whether an official is entitled to qualified immunity if improper motive -- such as purposeful race discrimination or retaliation -- is an element of the plaintiff's federal claim. In Crawford-El v. Britton, 523 U.S. 574, 593 (1998), the Court declined to place a higher burden of proof on plaintiffs in these situations, observing that "the improper intent element of various causes of action should not ordinarily preclude summary disposition of insubstantial claims." Justice Stevens's majority opinion then gave substance to this observation by instructing:

> [I]f the defendant-official has made a properly supported motion [for summary judgment on the ground of qualified immunity], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a

> jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.

523 U.S. at 600 (footnote omitted).  To decide this appeal, we must apply this Crawford-El instruction in reviewing a lengthy district court opinion that neither discussed qualified immunity nor cited Crawford-El as controlling authority.

A.  The Decision To Construct the Veneer Street Ditch.  Reviewing Wilson's surviving claims in chronological order, she first alleges that all defendants except Chief Inspector Dawson (who was not a City employee at the time) violated her Fourteenth Amendment right to equal protection when they constructed a drainage ditch to flood her lots because she is an African-American.  To prevail on an equal protection claim, plaintiff must allege and prove unlawful, purposeful discrimination; "random government incompetence" will not suffice.  Batra v. Board of Regents of Univ. of Neb., 79 F.3d 717, 722 (8th Cir. 1996).

In support of their motion for summary judgment, defendants submitted unrefuted evidence that the ditch was constructed in response to complaints by neighboring Malvern residents, including at least one African-American, that their properties to the west of Wilson's vacant lots were experiencing periodic flooding.  The ditch was intended to divert water from these properties past Wilson's property to the Veneer Street Creek.  In response, Wilson submitted no evidence of purposeful race discrimination other than her own unsupported opinion.  Therefore, each individual defendant is entitled to qualified immunity from this claim because the record is devoid of "affirmative evidence from which a jury could find . . . the pertinent motive."  Crawford-El , 523 U.S. at 600.

B. The Failures To Correct and Properly Maintain the Ditch.  Wilson's Second Amended Complaint next alleged that the defendants' failures to correct flow problems with the ditch and to mow large weeds and bushes growing in the ditch were

the product of racial animus toward Wilson and retaliation for her initial complaint. Wilson presented evidence that she complained in a July 2000 letter that water was continuing to pool on her lots even though the ditch had been extended to the Veneer Street Creek in July 1999, but the City took no corrective action. She submitted an affidavit by a registered professional engineer who studied the ditch and concluded that its low point is alongside Wilson's lots and therefore storm water was draining from the west *and* the east onto Wilson's property. Wilson further submitted evidence that weeds and bushes in the ditch remained unmowed until June 2004, when they had reached a height of some six feet. She asserted, quite logically, that this uncontrolled growth impeded drainage of water through the ditch, increasing the quantity of water that overflowed the ditch at its low point and pooled on her land.

In their motions for summary judgment, defendants made no effort to explain or justify these failures. The record on appeal contains no response to the July 19, 2000 letter from Wilson's attorney and no evidence that any effort was made to correct an incompetently constructed ditch that was damaging a citizen's property. Street Superintendent Lytle admitted in his November 2002 deposition that drainage ditches collect weeds and debris and need cleaning out every one to three years, and that weeds in the Veneer Street ditch needed mowing but were not mowed when a neighbor's ditch on the north side of Veneer Street was mowed in April 2002. Yet the ditch along Wilson's property was not mowed until June 2004, long after Lytle retired in 2003. The failures to respond to Wilson's facially legitimate complaints, to correct a harmful condition seemingly caused by Street Department incompetence, and to explain these failures to act create a reasonable inference of unconstitutional motive. Thus, the responsible individual defendants did not properly support their motions for qualified immunity from these claims within the meaning of Crawford-El.

The question remains, which individual defendants were responsible? Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. See Doran v. Eckhold, 409 F.3d 958, 965 (8th Cir.)

(en banc), <u>cert.</u> <u>denied</u>, 126 S. Ct. 736 (2005). Former Street Superintendent Lytle was in charge of constructing and maintaining the ditch until he retired in 2003. We must assume he was aware of Wilson's July 2000 letter and should have investigated the complaint of water continuing to pool on her lots. He knew the ditch needed mowing in November 2002 but did nothing. Likewise, current Street Superintendent Johnson helped construct the ditch and knew that its natural low point was along Wilson's lots. He testified that, after the ditch was completed in July 1999, he observed water being properly carried to the Veneer Street Creek after a hard rain. But he then did nothing to keep the ditch properly mowed until June 2004. On this record, both Lytle and Johnson are responsible persons who did not properly support their motions for qualified immunity from these claims.

On the other hand, Chief Inspector Dawson did not become a City of Malvern employee until March 2000, long after the ditch was completed, and was never a member of the Street Department. Wilson presented no evidence that Dawson was involved with any aspect of the ditch or was even aware of her complaints about the ditch problems. Dawson is entitled to qualified immunity from these claims.

Mayor Northcutt participated in the decision to construct the ditch. He also was the addressee on Wilson's May 1999 letter complaint, but that initial complaint was adequately answered by the City Attorney. Wilson's July 2000 complaint was addressed to the City Attorney. Wilson submitted no evidence that Northcutt was aware of this later complaint, the pooling problems that continued after the ditch was completed, or the Street Department's failure to maintain the ditch by periodic mowing. A mayor may not be held personally liable for Street Department failures of which he had no knowledge. <u>See</u> <u>Marchant v. City of Little Rock</u>, 741 F.2d 201, 204-05 (8th Cir. 1984). Northcutt is entitled to qualified immunity.

<u>C. Towing the Café Fish.</u> Finally, Wilson claims that defendants towed her sister's mobile restaurant in 2002 to retaliate against Wilson for filing her initial

lawsuit, an action protected by the First Amendment. The Café Fish was towed at the direction of Chief Inspector Dawson. Wilson submitted no evidence that Mayor Northcutt or Street Department employees Lytle and Johnson had anything to do with this regulatory action. Thus, the district court erred in not granting Northcutt, Lytle, and Johnson qualified immunity from this claim. Compare Powell v. Johnson, 405 F.3d 652, 656 (8th Cir. 2005).

Turning to the retaliation claim against Dawson, it is clearly established that a government official may not "punish [a citizen] for having exercised [her] constitutional right to seek judicial relief." Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1428 (8th Cir. 1986). Thus, the question is whether Wilson submitted "affirmative evidence from which a jury could find" a retaliatory motive. Wilson argues she has demonstrated temporal proximity -- she filed suit in March and the Café Fish was towed the following August. Temporal proximity is relevant but not dispositive. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.) (en banc), cert. denied, 528 U.S. 818 (1999). Wilson submitted no evidence that Dawson knew she had filed a lawsuit concerning the Veneer Street drainage ditch, or knew that the Café Fish was owned by Wilson's sister, Montiana Johnson, when the vehicle was towed from Ms. Johnson's property. Thus, the record on appeal contains no evidence providing a basis for inferring retaliatory intent.[2] Wilson's belief that Dawson acted from a retaliatory motive is insufficient. Technical Ordnance, Inc. v. United States, 244 F.3d 641, 652 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002). Dawson, too, is entitled to qualified immunity from this claim.

---

[2]Wilson presented evidence that the City has not towed dilapidated vehicles in the downtown area. But a motor home functioning as a restaurant is subject to considerably more public safety regulation than an unsightly motor vehicle, so this evidence raises no inference of selective law enforcement or retaliatory motive. Wilson also claims that the videotape of an interview of City Attorney Roberts by a local news team is evidence that the towing was improper. The videotape was not made part of the record on appeal and is therefore irrelevant.

The district court's order dated January 4, 2005 is reversed in part. The case is remanded for further proceedings not inconsistent with this opinion.

_____