LOKEN, Circuit Judge,
concurring in the judgment,
joined by COLLOTON, Circuit Judge.
Substantially for the reasons stated in Judge Murphy’s opinion, I concur in the decision to reverse the grant of summary judgment dismissing plaintiffs’ hostile work environment claims against Sgt. Miles and plaintiff Jaryl Ellis’s retaliation claims against Lt. Stoner and Lt. Haney, and otherwise to affirm the decision of the district court. I write separately to emphasize the relevance of important differences between employer liability under Title VII and individual liability under 42 U.S.C. §§ 1981 and 1983.
1. Incidents of racial harassment aimed at a group of plaintiffs must be considered as a whole in determining whether they created, from the plaintiffs’ perspectives, *327 an actionable hostile work environment. Whether a workplace is “permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to ... create an abusive working environment” can be determined “only by looking at all the circumstances.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In opposing summary judgment on their hostile work environment claims, plaintiffs’ submitted substantial evidence that they were subjected, as a group, to racially derogatory jokes and comments made on a daily basis at a mandatory roll call session attended by all members of the predominantly white first shift, including their direct supervisors. I agree this was sufficient evidence of severe and pervasive race-based harassment to preclude summary judgment on this ground, whether plaintiffs sued under Title VII or under §§ 1981 and 1983.
But a defendant’s personal liability under §§ 1981 and 1983 requires proof of intentional discrimination by that defendant. See General Bldg. Contractors Ass’n v. Pa., 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (“ § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination”); Patterson v. Cnty. of Oneida, NY, 375 F.3d 206, 229-30 (2d Cir.2004); Ottman v. City of Independence, Mo., 341 F.3d 751, 2929 759-61 (8th Cir.2003). Compare Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1111 (8th Cir.1998) (no individual supervisor liability under Title VII). Even if the individual defendant exercised at least some supervisory authority over the plaintiff, as in this case, liability under §§ 1981 and 1983 is not established merely by proof that the defendant was deliberately indifferent to racial harassment by his subordinates, as we suggested in Ottman, 341 F.3d at 761, or by proof of a “general racial animus in the prison” and “lack of response by the supervisors,” as the courts ruled in Snell v. Suffolk County, 782 F.2d 1094, 1097 (2d Cir.1986), and Allen v. Michigan Department of Corrections, 165 F.3d 405, 410-11 (6th Cir.1999). In my view, those rulings were overruled by Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), where the Court held:
In a § 1983 suit ... where masters do not answer for the torts of their servants — the term “supervisory liability” is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.... [Purpose rather than knowledge is required to impose [§ 1983] liability on ... an official charged with violations arising from his or her superintendent responsibilities.
Thus, “where the intent to discriminate is an element of the constitutional violation .... the plaintiffs must show that the supervisory officials themselves acted with an impermissible motive, not merely that they knew of their subordinates’ impermissible motives and did not put a stop to their actions.” Dodds v. Richardson, 614 F.3d 1185, 1210 (10th Cir.2010) (Tymkovich, J., concurring), cert. denied, — U.S. -, 131 S.Ct. 2150, 179 L.Ed.2d 935 (2011). Applying this standard to a case where multiple co-workers are accused of engaging in racial jokes, taunts, and insults that, over an undefined period of time, created a hostile work environment for five minority plaintiffs, is a complex task. It is not enough that a defendant “participated” in the racial taunts and insults and turned a blind eye to harassing conduct by his subordinates. Plaintiffs must prove he acted (and failed to act) for the purpose of creating a hostile work environment for the plaintiffs, that is, that he intended to alter the terms and condi *328 tions of their employment through severe and pervasive racial harassment. Determining the liability of an individual supervisor or co-worker in this type of case is very different than determining when the public employer is liable for the existence of such a hostile work environment in its workplace. See Vance v. Ball State Univ., — U.S. -, 133 S.Ct. 2434, 2441-42, 186 L.Ed.2d 565 (2013).
Viewing the current record in the light most favorable to plaintiffs, I agree there is sufficient evidence of Sgt. Miles’s sustained participation in racial harassment to preclude summary judgment dismissing the hostile work environment claims against him. Plaintiffs allege that Miles made offensive “jokes” regularly over the course of a few months in front of the entire first shift, with one witness describing it as “almost like a daily occurrence.” Miles made the majority of the alleged derogatory comments at roll call, and plaintiffs testified that the harassment was worse when he was there. Though the record suggests that Sgt. Miles was not in charge at roll call, he was an employee of superior rank.[4] Even if the insensitive comments were initially thought to be mere teasing or joking, a jury could reasonably infer that a supervisor who continued to participate in the hazing after Ellis, one of the targets, exclaimed, “damn the jokes” and “enough is enough,” was intentionally creating a hostile work environment. Taking all of these circumstances into account, I agree there is enough evidence in this record to submit to a jury whether Sgt. Miles participated in sufficiently severe or pervasive racial harassment with the purpose of creating a hostile work environment for one or more of these plaintiffs.
The doctrine of qualified immunity is another important difference between Title VII claims against employers and § 1983 claims against individual public employee defendants. Plaintiffs’ claims turn on proof of intentional race discrimination. When “improper motive — such as purposeful race discrimination or retaliation — is an element of the plaintiffs federal claim,” liability for damages is personal, “so each defendant’s conduct must be independently assessed.” Wilson v. Northcutt, 441 F.3d 586, 590, 591 (8th Cir.2006); see generally Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). In cases such as this, it is certainly relevant to the qualified immunity inquiry that a “continuous racially invidious climate” has been held to be a hostile work environment in some prior cases. But that is not enough. This cause of action is not “a general civility code for the American workplace,” Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), and in numerous cases we have concluded that some amount of race-related insults or derogatory comments does not create an actionable hostile work environment under either Title VII or § 1983. Pye v. Nu Aire, Inc., 641 F.3d 1011, 1018 (8th Cir.2011); Smith v. Fair-view Ridges Hosp., 625 F.3d 1076, 1086-87 (8th Cir.2010), cert. denied, — U.S. -, 131 S.Ct. 2904, 179 L.Ed.2d 1250 (2011); Gordon v. Shafer Contracting Co., 469 F.3d 1191, 1195 (8th Cir.2006); Canady v. Wal-Mart Stores, Inc., 440 F.3d 1031, 1035 (8th Cir.2006); Singletary v. Mo. Dept. of Corr., 423 F.3d 886, 893 (8th Cir.2005); Bainbridge v. Loffredo Gar *329 dens, Inc., 378 F.3d 756, 759-60 (8th Cir.2004); Elmahdi v. Marriott Hotel Servs., Inc., 339 F.3d 645, 652-53 (8th Cir.2003); Burkett v. Glickman, 327 F.3d 658, 661-62 (8th Cir.2003); Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843-44 (8th Cir.2002); Powell v. Mo. State Highway and Transp. Dept., 822 F.2d 798, 801 (8th Cir.1987); Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir.1981).
In the district court, Sgt. Miles filed a separate motion for summary judgment, arguing that, in light of these prior authorities, “a reasonable official in Miles’ position would not have had ‘fair warning’ that [the specific comments plaintiffs alleged he made] would cause the deprivation of a Federal right.” Sgt. Miles was not deposed, and the record contains only a brief affidavit submitted with this motion stating that Sgt. Miles does not recall making the racially derogatory statements plaintiffs allege. The district court did not reach the qualified immunity issue, concluding that plaintiffs had failed to prove their claim of a hostile work environment on the merits. On appeal, all defendants argue qualified immunity, but only superficially.
Sgt. Miles simply denied plaintiffs’ allegations that he was guilty of racially discriminatory conduct, and his motion to the district court understated the extent of harassment alleged by plaintiffs. On this record, I agree we should not affirm the grant of summary judgment on this alternative ground. But the issue is likely to resurface in the district court, before and/or after trial. See Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Because § 1983 liability is personal, proper resolution of the qualified immunity issue would require careful consideration of what Miles did, when he did it, when plaintiffs’ workplace first became an actionable hostile environment, and what Miles knew of each plaintiff’s work environment at that time and thereafter.
2. Turning to the retaliation claims, a prima facie case of retaliation requires a showing that the alleged retaliation “might have dissuaded a reasonable worker from making or supporting a charge of discrimination.” Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). “Our post-Burlington Northern decisions have consistently held that, to be materially adverse, retaliation cannot be trivial; it must produce some ‘injury or harm.’ ” Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 644 (8th Cir.2009) (quotation omitted). Because “[c]ontext matters” in applying this standard, “reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiffs position, considering all the circumstances.” Burlington Northern, 548 U.S. at 69, 71, 126 S.Ct. 2405 (quotation omitted). In the particular circumstances of this case, I agree the evidence of sufficient harm to plaintiff Ellis from Lt. Stoner’s and Lt. Haney’s retaliatory actions — frequent, unprecedented adverse write-ups and assignments to less desirable, more arduous duties — precludes the grant of summary judgment dismissing Ellis’s claim of unlawful retaliation by those defendants.

. This fact is at least prima facie evidence that he acted under the "color of state law” that § 1983 requires, that is, that his alleged harassment "involve[d] the use of either state authority or position.” Ottman, 341 F.3d at 762. The parties have not briefed or argued the question whether Miles acted "under col- or of state law” when participating in the alleged racial harassment.